Fred **FREDERICKS**

v.

**AMERICAN EXPORT LINES, Inc.**

**S. J. FARRINGTON IRON WORKS, Inc.,**

v.

**JOHN W. McGRATH CORPORATION.**
No. 10, Docket 23077.

United States Court of Appeals
Second Circuit.

Argued Oct. 4, 1955.
Decided Nov. 7, 1955.

Sylvia Miller, New York City (Chester A. Hahn, New York City, of Counsel), for plaintiff-appellee-appellant.

John J. Kirwan, New York City (Leo F. Hanan and Martin J. McHugh, New York City, of Counsel), for defendant-appellee.

Hurley, Kearney, Lane & Mattison, Brooklyn, New York (Denis M. Hurley, George P. Lane and William C. Mattison, Brooklyn, N. Y., of Counsel), for defendant-appellant S. J. Farrington Iron Works, Inc.

Before CLARK, Chief Judge, and MEDINA and LUMBARD, Circuit Judges.

MEDINA, Circuit Judge.

Plaintiff was employed as a longshoreman on Pier 84, New York City, by the John W. McGrath Corporation (McGrath), which was under contract to perform general stevedoring services for the American Export Lines, Inc. (American), the lessee in possession of the pier. On April 13, 1951, plaintiff was standing on a skid or platform, assisting in the transfer of cargo from a ship to the upper story of the pier, when one of the iron supports on the skid broke, the skid gave way and plaintiff was precipitated to the stringpiece of the pier below. To recover damages for the serious injuries resulting from his fall, plaintiff brought this action, invoking the diversity jurisdiction of the District Court, against American and the S. J. Farrington Iron Works, Inc. (Farrington). Plaintiff appeals from the trial court's dismissal, at the end of his case, of the complaint against American; defendant Farrington appeals from the judgment entered on the jury's verdict for the plaintiff against Farrington. 117 F.Supp. 355.

### Farrington's Appeal

The skid was the property of McGrath and was one of a type designed by a McGrath employee along lines suggested by skids used by another stevedore. It consisted of wooden planks, reinforced and bolted onto a bed of three iron plates, one at either end, and one in the center, each of which was six inches wide and three-fourths of an inch thick. Laterally, on one side all three irons made two right angle turns. The first turn was around the plank, marking one end of the bed; and the second turn was away from, but level with the planks, forming metal extensions, which fitted into and rested unfastened on the upper floor of the pier when the skid was in use. On the other side, the center plate terminated with the planking of the skid. The two end plates bent up at right angles to form pad eyes. When a loft skid is in use, two wire cables, one hooked into each pad eye, and suspended from the uprights of the pier, on either side of the doorway or opening, provide support for the skid. Loss of part of this support, when a pad eye broke off from the rest of the skid iron, was the immediate cause of the accident.

■ The applicable law is that of New York, and in instructing the jury the Court correctly, it is conceded, relied on that line of cases beginning with MacPherson v. Buick, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696. The substance of the charge was that the jury was to return a verdict for the plaintiff if they found, first, that a defectively fabricated skid iron was to Farrington's knowledge reasonably certain to place life and limb in peril, second, that the broken skid iron had in fact been negligently fabricated by Farrington, and, third, that Farrington's negligence was a proximate cause of plaintiff's injury.

■ The broken skid iron was one of some seventy-five irons fabricated by Farrington on orders placed by McGrath between 1945 and 1948. The break, in the expert opinion of one witness, might have started at the time of fabrication. In any event, it occurred because the concave surface of the right angle between bed and pad eye was formed over too small a radius creating a "stress raiser" or "localizer," an inherent weakness. This, the expert testified, had the effect

of increasing indeterminably the stress put on the metal by any given load so that the metal would start to fail under a small load. From this evidence the jury could have found negligence and proximate cause. There was also evidence from which the jury could have deduced that Farrington had knowledge of the purpose to which the iron was to be put and hence of the danger to which human life would be exposed if the iron proved defective.

Farrington bases its first argument on the language of Judge Cardozo in MacPherson v. Buick. "The principle that the danger must be imminent does not change," which appears at page 291 of 217 N.Y. at page 1053 of 111 N.E., is interpreted by the defendant as a holding intended to limit the liability of the manufacturer in terms of the period of time intervening between cause and effect. MacPherson v. Buick, however, does not so hold, and immediacy in point of time is not an indispensable element of the New York rule. A bomb is nonetheless deadly if it contains a time mechanism. On the other hand, evidence of the passage of time, together with that of other attendant circumstances, is admissible, in order that a jury may not be led astray. The mere passage of time confers no immunity upon a negligent wrongdoer; but it has relevance to the likelihood, depending upon the circumstances of a particular case, that deterioration due to use, perhaps accelerated by misuse, will be mistaken by a jury for a defect due to negligent manufacture or fabrication. On the evidence before us in this case, we cannot say the jury went beyond permissible and rational inference in attributing the accident to Farrington's negligent fabrication of the skid iron, which cracked and came apart, despite at least two and one-half years of apparently safe use and normally rough handling. Davis v. Long Island R. R., 301 N.Y. 450, 453, 95 N.E.2d 700; Newhall v. McCann, 267 N.Y. 394, 398, 196 N.E. 302; Hayes v. Thompson, Sup. Ct.1874, 2 Hun 518.

A brief discussion of another ground for reversal urged by Farrington will serve to bring into focus what seems to have been one of Farrington's principal contentions at the trial, the particulars of which will be referred to shortly.

The jury retired for their deliberations at 12:42 P.M. and at 3:45 P.M. requested further instructions, which were given. At 5:40 P.M. the forelady sent a message to the effect that the jury were unable to agree, but the trial judge requested them to make a further attempt to arrive at a verdict. Thereupon the jury requested that certain exhibits be brought to the juryroom and about fifteen minutes later, at 6:15 P.M., the trial judge, of his own motion and without further request from the jury or anyone else, recalled the jury and proceeded further to clarify "some portions" of his charge. He said:

"The Court: Ladies and gentlemen, I have been troubled that some portions of my charge might not have been as clear as they could have been, so I have attempted to rephrase, in the hope that clarification will be served.

"The issues for your consideration are actually few and relatively simple, and you may not consider any other issues than the ones I submit for your consideration. You can't speculate. The Court frames the issues, and those are the issues you will concern yourselves with."

This introductory statement was followed by a paraphrase of what had already been said in the main charge on the subject of what the law required to be shown by way of knowledge by Farrington of the use which the skid iron "would be put to," in order to charge Farrington with a duty toward plaintiff, followed by a few words to assist the jury in reaching a conclusion on the subject of negligent fabrication.

It is claimed that it was error to emphasize these matters and that the effect of such supplemental instructions was to eliminate the issue of proximate cause as

one of the essential elements of plaintiff's case.

■ The notion that a trial judge lacks power *suo motu* to recall a jury for further instructions when he thinks they are needed is indeed a startling proposition, reminiscent of the days of Jacksonian democracy, when local judges in many states were shorn of some of their traditional and necessary common law powers. Fortunately, no such shackles were put upon the federal judiciary. The trial judge had undoubted power to do what he did here. Allis v. United States, 155 U.S. 117, 15 S.Ct. 36, 39 L.Ed. 91; Charlton v. Kelly, 9 Cir., 156 F. 433.

■ Moreover, we are confident that neither the trial judge nor the jury thought that any of the issues submitted in the main charge were being taken from the jury.

Defendant Farrington, however, insists in its brief and on oral argument that there was intervening negligence by McGrath and that the case against Farrington should have been dismissed or that the jury should have been instructed that, if they found such intervening negligence by McGrath, they should return a verdict in Farrington's favor.

While certain requests for instructions relative to the duty of McGrath to inspect the skid iron would seem to have been properly denied on technical grounds, we will assume that the point is properly raised by the objection noted just after the supplemental instructions above referred to were given. At that time counsel for Farrington asserted that these instructions were erroneous in that they "eliminated from the case any consideration * * * by the jury of any intervening act of negligence, whether on the part of John W. McGrath Corporation or anyone else."

Plaintiff's expert witness testified that the crack in the skid iron, at the place where it sheared off or broke at the time of the accident, was a progressive crack and must have had its inception a considerable time before the final and complete severance. He also testified that the crack should have been visible to the naked eye from the side, though not across the surface of the metal on the inside of the right-angled bend. There was evidence that McGrath subjected all its equipment to monthly inspection, but the crack was not observed, or reported.

■ It is elementary that the concurrent negligence of some third person will not absolve a defendant upon whom liability is sought to be imposed for the consequences of his own delict. Could the jury here, on the evidence before it, have properly found that the flow of causation, arising from the negligent fabrication of the skid iron by Farrington, was broken by McGrath's failure to discover the defect?

■ The point is not new, and many New York cases, decided after MacPherson v. Buick, have held that the negligent manufacturer of an article which is dangerous to life and limb when put to the use for which it was intended, may be liable, even though the negligence would have been without harmful effect had an intervening purchaser diligently performed his duty to inspect. Rosebrock v. General Electric, 236 N.Y. 227, 140 N.E. 571; see Sider v. General Electric Co., 4th Dept. 1922, 203 App.Div. 443, 197 N.Y.S. 98, affirmed 238 N.Y. 64, 143 N.E. 792; see Smith v. Peerless, 259 N.Y. 292, 181 N.E. 576. Legal scholars who have considered the question endorse the policy of these cases. See 2 Restatement, Torts, Sec. 396 (Supp.1948); Prosser, Torts, § 84, at p. 504 (2d ed. 1955); Bohlen, Liability of Manufacturers, 45 Law Quarterly Rev. 343 (1929).

That the intervening purchaser will remain passive or otherwise fail to do what he ought to do to prevent the course of events, is a reasonably foreseeable consequence of the original wrongdoing. Moreover, this is not a distinction based upon mere passivity but rather upon whether or not the ultimate fact or occurrence is reasonably foreseeable. This is a far cry from the doing of something or the refraining from doing something constituting an improbable, independent,

intervening cause, which is a superseding cause and breaks the sequence. Perry v. Rochester Lime Co., 219 N.Y. 60, 113 N.E. 529, L.R.A.1917B, 1058; Ford Motor Co. v. Wagoner, 1946, 183 Tenn. 392, 192 S.W.2d 840, 852, 164 A.L.R. 364; Prosser, Torts, § 49 (1941).

### Plaintiff's Appeal Against American

 Plaintiff's appeal must also fail, because his entire reasoning rests upon the untenable premise that the skid was part of American's plant or premises. To prove this plaintiff devoted considerable effort at the trial to eliciting testimony that cargo could not be safely transferred from aboard ship to the upper story of the pier without the use of a skid. There was some testimony to the contrary. But tools or equipment do not become part of a lessee's plant merely because such tools or equipment are indispensable to the work that an independent contractor has agreed to perform. See e. g., Broderick v. Cauldwell-Wingate Co., 301 N.Y. 182, 93 N.E.2d 629; Iacano v. Frank & Frank Contracting Co., 259 N.Y. 377, 182 N.E. 23; Hess v. Bernheimer, 219 N.Y. 415, 114 N.E. 808. In fact the skid was no more essential to the performance of stevedoring services than the other equipment used by McGrath, such as ropes, pulleys and miscellaneous carrying and moving facilities. Nor is there any dispute about the fact that McGrath was at all times the owner and in exclusive possession and control of the skid.

In view of the foregoing, it requires no extended argument to demonstrate that Sections 2(13) and 200 of the New York Labor Law, McK.Consol.Laws, c. 31, can be of no avail to plaintiff.

Finally, while in recent years the warranty of seaworthiness has been held by the Supreme Court to cover a pretty wide territory, Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L. Ed. 143; Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.

Ed. 798; Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120, nevertheless, here the injury was incurred by a longshoreman standing on a pier, as a result of the failure of a defective appliance located on the pier and furnished by a subcontractor. No decision so far has extended the sweeping protection of the seaworthiness doctrine to this situation. No vessel was connected with the accident.

The judgments are affirmed.