Callie RICH, Plaintiff-Appellant,

v.

ELLERMAN & BUCKNALL S.S. CO., Ltd., Defendant-Appellee and Third-Party Plaintiff,

v.

JOHN T. CLARK & SON, Third-Party Defendant.

No. 249, Docket 25742.

United States Court of Appeals Second Circuit.

Argued March 31, 1960.

Decided May 12, 1960.

Louis R. Harolds, New York City, (Standard, Weisberg, Harolds & Malament, New York City, on the brief), for plaintiff-appellant.

William J. O'Brien, New York City (Louis J. Gusmano and Kirlin, Campbell & Keating, New York City, on the brief), for defendant-appellee and third-party plaintiff.

Hampton & Dietel, New York City (William F. McNulty, New York City, on the brief), for third-party defendant.

Before LUMBARD, Chief Judge, BARNES,* Circuit Judge, and SMITH, District Judge.

J. JOSEPH SMITH, District Judge.

 The plaintiff Callie Rich, a longshoreman in the employ of John T. Clark & Son, third party defendant, was injured on April 23, 1953, while working at cargo stowage in the 'tween deck of No. 3 hatch of the S.S. City of Canberra, owned by Ellerman & Bucknall S.S. Co., defendant and third party plaintiff. A pile of

---

* Of the Ninth Circuit, sitting by designation.

automobile truck chassis upon which plaintiff stepped tilted, causing the injury. The vessel was loading at Pier 5, Bush Terminal, Brooklyn, New York. Rich brought this action by complaint filed July 1, 1955 in the United States District Court for the Eastern District of New York against Ellerman Lines Ltd. and Ellerman & Bucknall Ltd. S.S. Co., claiming both negligence and unseaworthiness. Third party complaint against the stevedore John T. Clark & Son was filed August 17, 1956. Trial to the jury began May 7, 1959. During the trial the action as to Ellerman Lines Ltd. was discontinued by agreement. From judgment on a jury verdict for defendant, plaintiff appeals, assigning as error rulings on evidence, denial of plaintiff's motion for directed verdict, and error in the charge. The rulings on evidence and errors in the charge require reversal. On the remaining ground of appeal, the testimony as to what could be seen of the lack of support for the pile of chassis which tilted when plaintiff stepped on it, causing his injury, is somewhat conflicting. There is an apparent discrepancy between plaintiff's pretrial statement, third party defendant's Exhibit B and plaintiff's testimony as to the location of the pile of chassis and the way the accident happened. We cannot, therefore, say that it was error to deny a directed verdict for the plaintiff, at least on the issue of what proportion of fault, if any, lay with plaintiff. We reverse and remand for new trial.

There is no dispute as to many of the facts. From 8 to 12 on the morning of the day of the accident the gang with which plaintiff was working was stowing cargo in No. 2 hold. It had not previously worked No. 3 hold. After lunch this gang at 1:00 p. m. shifted to the upper 'tween deck of No. 3 hold, already partly stowed by another gang of Clark's employees.

The 'tween deck or cargo space was about 40' fore and aft, 35' athwartship. The area directly below the hatch opening in the center of the space, known as the square of the hatch, was about 10' x 12'. Aft of the square of the hatch the cargo space was separated into two sections by a temporary wall or divider running fore and aft. A packing case, about 7' square and 7' high had been placed just to port of the divider, just aft of the square of the hatch. To port of the case general cargo was stacked. Aft of the case was stacked a pile of truck chassis, lower in height than the top of the case. The chassis were approximately the same length as the distance from the divider to the port wing of the hold. They were piled flat one on another athwartship.

When plaintiff's gang took over in No. 3 hatch they piled cargo in a square in the square of the hatch next to the packing case to make a platform known as a stool across which they could transport additional cargo, auto parts, to be stowed atop the pile of chassis aft of the packing case. By 2:30 they were ready to start placing cargo on the chassis.

Plaintiff, with a wooden roller in his hands for use in moving cargo across the packing case, traversed the case and stepped down with one foot on the pile of chassis. It held and he brought his other foot down, whereupon the chassis tilted, dropping him between the chassis and the packing case, where he hung, causing a tearing of the structures of his right shoulder, an injury later resulting in operations and a permanent partial disability. The jury could have inferred that the chassis were not properly supported, but were held off the deck solely by friction of the frame ends against the divider and the port wing of the ship, that they had been in that condition for more than an hour and a half, and that in normal stowage it was to be expected that longshoremen in the situation of the plaintiff would walk or stand on them in completing the stowage of the hold.

Clark's men exclusively were handling the loading. There was a conflict as to whether any ship's officer was or should have been in any way overseeing or observing the loading. The claim based on negligence was therefore in serious dispute on the proof. That made it of vital

importance that the elements necessary for recovery on each of the two claims be clearly defined and distinguished. This the charge fails to do. The charge required notice of the improper stowage or unsafe condition to make the shipowner liable. This portion of the charge probably was intended to have reference only to the negligence claim, but should have been so restricted that the jury clearly so understood. It was not so restricted.

The liability of the shipowner for injury due to unseaworthiness has developed in a series of cases stemming from The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561, Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 428–429, 59 S.Ct. 262, 83 L.Ed. 265. It was extended to longshoremen doing seamen's work in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. It has been described recently as "an absolute duty imposed, regardless of fault, going back to archaistic notions of legal obligations and penalties imposed on inanimate objects, but retaining its vitality because of its contribution to modern notions of the distribution of loss among those who follow the sea." Hand, J. in Latus v. United States, 2 Cir., 277 F.2d 264. The absolute liability of the shipowner for unseaworthiness does not depend upon notice to the owner. Poignant v. United States, 2 Cir., 225 F.2d 595, 597. Moreover, the portion of the charge which was intended to apply to the seaworthiness claim may well have been understood to have been limited to structural defects in hull or gear. This was not sufficient under the circumstances here, for the unseaworthiness claimed was the dangerous working platform consisting of the chassis in the condition in which they were left by Clark's men sometime before noon. A ship may be unseaworthy because of improper stowage. Palazzolo v. Pan-Atlantic S.S. Corp., 2 Cir., 211 F.2d 277, affirmed sub nom. Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Reddick v. McAllister Lighterage Line, Inc., 2 Cir., 258 F.2d 297, 299, certiorari denied 358 U.S. 908, 79 S.Ct. 235, 3 L.Ed.2d 229.

If there was in fact a dangerous working platform endangering longshoremen in plaintiff's situation, which caused plaintiff's injuries, the shipowner was liable regardless of notice and regardless of the fact that the dangerous condition was created by another. The duty to provide a reasonably safe place to work, i. e., a seaworthy vessel reasonably fit in hull, gear and stowage in that respect, is absolute and nondelegable. Grillea v. United States, 2 Cir., 232 F.2d 919, 923. The charge that the shipowner is not liable for injuries resulting solely from the manner in which the stevedore did the work is error in a case where, as in this instance, one of the claims is unseaworthiness from improper stowage.

We do not have here any question of the shipowner's responsibility for a transitory condition caused by foreign matter, but rather a condition of cargo in place upon which longshoremen may be expected to work in the completion of the loading. The defect here is a condition to which the longshoreman is exposed which may be classed with the defective block furnished by the stevedore in Alaska S.S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, the defective cargo crate in Reddick v. McAllister Lighterage Line, Inc., supra, and the defective hatch cover in Grillea v. United States, supra.

The rulings on evidence, while perhaps not sufficient in themselves for reversal, are justly criticized as unduly restrictive of plaintiff's proof. Some expert testimony was finally allowed to stand, yet testimony of the plaintiff, Venable and Tolbert as to the customary practice of chassis stowage was excluded, despite their many years' experience in the field. The witnesses were sufficiently qualified. Bratt v. Western Air Lines, 10 Cir., 155 F.2d 850, 166 A.L.R. 1061, 2 Wigmore on Evidence, 3rd Ed., Sec. 556. Photographs of the shoulder area of plaintiff's body showing

708

post-operative scars were excluded, as were offers to exhibit the shoulder to the jury. Inspection of the photographs fails to reveal the basis for the ruling, for there is nothing gruesome or revolting about them, or any likelihood that they would inflame or bias a jury. Limitation of proof of the nature of the injuries to a description by a doctor was unduly restrictive. Autoptic proference is always'proper, unless reasons of policy apply to exclude it. See 3 Wigmore on Evidence, 3rd Ed., Sec. 792, 4 id. Secs. 1151, 1158; Toledo Traction Co. v. Cameron, 6 Cir., 137 F. 48, 66.

The injuries in this case were suffered seven years ago, the action brought almost five years ago. In view of the long delay, the District Court may well consider advancing the case on the docket for immediate retrial. Reversed and remanded.