Vincent **FORKIN**, Plaintiff-Appellant,

v.

**FURNESS WITHY & CO., Ltd.,**
Defendant-Appellee.

No. 24, Docket 28159.

United States Court of Appeals
Second Circuit.

Argued Oct. 4, 1963.

Decided Oct. 17, 1963.

J. Joseph Smith, Circuit Judge, dissented.

Jacob Rassner, New York City (Zale & De Vito, New York City), for plaintiff-appellant.

Joseph M. Cunningham, New York City (Kirlin, Campbell & Keating, New York City) (Vernon S. Jones, New York City, of counsel), for defendant-appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

In this action for personal injuries, brought by Forkin, a longshoreman, against Furness Withy & Co., Ltd., owner and operator of the "Queen of Bermuda," in the Supreme Court for New York County and removed to the District Court for the Southern District of New York, 28 U.S.C. §§ 1332(a) (2) and 1441, Judge Dawson directed a verdict for the defendant at the close of the plaintiff's case on the issue of liability. We hold the direction was proper.

The facts as developed by plaintiff's witnesses were as follows: Forkin was a longshoreman in the employ of Bay Ridge Operating Company, a stevedoring contractor which operated Pier 95 North River—a pier that was regularly used by the Queen of Bermuda as well as by vessels not operated by Furness Withy & Co. Forkin reported for duty one morning at 8 A.M.; the Queen was then in mid-stream, approaching the pier. His first task was to help secure a line thrown from the ship as she entered the slip. He then was summoned by his foreman, Carroll, also a Bay Ridge employee, to help affix to the ship a conveyor belt which was being hoisted from the pier to a side-port for use in unloading baggage and loading ship's stores. The normal method for lifting the conveyor off the pier to the proper position was to attach a wire or rope fall to a wire bridle fastened to the outer end of the conveyor, to pass the fall through a block on top of the pier, and then to hoist it with an electric winch on the pier below. On the morning in question access to the winch was obstructed by newsprint previously unloaded from some other ship. Instead of moving enough of this to give access to the winch, the stevedore foreman caused a rope to be passed around the conveyor and ordered a crane operator to lift the conveyor toward the ship by hooking onto the rope. When the conveyor had thus been raised to what was considered the correct angle, the foreman and Forkin went out on it to shackle wires at its end to cleats on the ship. The conveyor had not quite reached the side port, but was close enough for Forkin to rest one hand on the ship's side. Finding that the conveyor was positioned too low to fasten

the wires, the foreman ordered the craneman to lift it; the rope, worn by the conveyor, snapped and the conveyor fell, pitching Carroll into the water and injuring Forkin's leg. Later the conveyor was positioned by use of the wire bridle and winch. So far as appears, all this equipment was owned by the stevedores; certainly it was operated by them.

█ The complaint predicated liability of the shipowner both upon negligence and upon unseaworthiness. The absence of evidence to support the former theory is too clear to require extended discussion. The decision to take the easy way of hoisting the conveyor by a rope and crane rather than move enough newsprint to give access to the winch was made by the stevedore foreman, without any participation or knowledge by the shipowner. Neither can the ship be charged with negligence for the blocked access to the winch. While the failure to remove this obstruction and gain access to the winch was negligent on the part of Bay Ridge, no basis exists for charging either the condition or the failure to cure it to a shipowner not shown to have exercised any control at any time over the stevedoring activities on the pier. West v. United States, 361 U.S. 118, 123, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959); Gallagher v. United States Lines Co., 206 F.2d 177 (2 Cir.), cert. denied, 346 U.S. 897, 74 S.Ct. 221, 98 L.Ed. 398 (1953). Although "control of the impact zone is not essential for negligence," Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 211, 83 S.Ct. 1185, 1188–1189, 10 L.Ed.2d 297 (1963), some careless act or failure to act must be established. We perceive no basis for concluding that a ship is required either to have someone on shore to police the previous placing of other cargo on a pier at which she is about to land or the dispositions taken by stevedores in regard to it, or to maintain a watch on board the ship to see that shore installations to be used on her arrival have been properly rigged by a qualified independent contractor hired to do exactly that.

█ With respect to unseaworthiness we start with the inevitable quotation

"That the vessel and her owner are * * * liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship." The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903). Two issues emerge. Was Forkin acting as a "seaman" within the expansion of that term wrought by Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946)? And was there such a defect in "the proper appliances appurtenant to the ship" or, in Judge Learned Hand's phrasing, "in hull, gear and stowage," Grillea v. United States, 232 F.2d 919, 922 (2 Cir., 1956), as to render her not "reasonably suitable for her intended service"? Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). Defendant properly concedes that liability to the plaintiff for unseaworthiness is not ruled out because the accident did not happen aboard ship—a position for which Gutierrez, supra, 373 U.S. at 214, 83 S.Ct. at 1190–1191, 10 L.Ed.2d 297, is *a fortiori* authority.

Examination of the Sieracki opinion gives rise to serious doubt whether its rationale is fairly applicable to a longshoreman readying a shore-based installation for fixation to the ship. The basis of the decision was that "Historically the work of loading and unloading is the work of the ship's service, performed until recent times by members of the crew," 328 U.S. at 96, 66 S.Ct. at 878, 90 L.Ed. 1099, and that the owner ought not be permitted to escape liability for unseaworthiness to those who do "the ship's work," 328 U.S. at 93, 66 S.Ct. at 876–877, 90 L.Ed. 1099, by having this performed by men "employed and furnished by another." 328 U.S. at 92–93, 96, 66 S.Ct. at 876–877, 878, 90 L.Ed. 1099. Within the last decade, the premise that "the work of loading and unloading" was "performed until recent times by members of the crew," has been challenged as much too broad. See Tetreault, Seaman, Seaworthiness, and the Rights of Harbor

Workers, 39 Corn.L.Q. 381, 413–14 (1954); Shields and Byrne, Application of the "Unseaworthiness" Doctrine to Longshoremen, 111 U. of Pa.L.Rev. 1137, 1140–47 (1963); it seems certain that, at least in major ports, the stevedore has a long lineage, reaching back to ancient times and, in this country, to the nation's earliest days. See Swift v. The Happy Return, 23 Fed.Cas. 560, 561 (No. 13697) (D.Pa.1799). However all this may be, and for us, of course, the historical premise of Sieracki stands, it takes some imagination to suppose that the work of putting out a gangplank from shore to ship was generally done by members of the ship's crew,[1] even in instances where the crew did handle, or assist in, subsequent unloading and loading. Plaintiff conceded that, to his knowledge, work of this sort is performed not by sailors from the ship but by shoreside men. Cf. Partenweederei, MS Belgrano v. Weigel, 299 F.2d 897, 902 (9 Cir.), cert. denied, 371 U.S. 830, 83 S.Ct. 49, 9 L.Ed.2d 67 (1962).

■ We find it unnecessary to pass on this issue, since we hold that the defect which caused Forkin's injury was not within the shipowner's warranty of seaworthiness. Equipment maintained on a pier to establish connection with a ship is not an "appliance appurtenant to the ship" or part of the ship's "gear," at least until it has been affixed. Although "the shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability" and "What has evolved is a complete divorcement of unseaworthiness liability from concepts of negligence," Mitchell v. Trawler Racer, Inc., supra, 362 U.S. at 549–550, 80 S.Ct. at 932–933, 4 L.Ed.2d 941, the defect must be in a thing, or a person, within the scope of the shipowner's warranty, and a warranty normally relates to what has been furnished by the warrantor, not by someone else whose equipment is merely being readied for the warrantor's use. Alaska S.S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954),

affirming 205 F.2d 478 (9 Cir., 1953), and Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120 (1954), reversing 205 F.2d 57 (3 Cir., 1953), are not to the contrary. In those cases the defective gear had been brought on board ship by the stevedores and used integrally with the ship's own equipment; the shipowner could have inspected the gear when it came aboard if he had chosen to do so. We see no basis for distinguishing between the portable conveyor in this case and the portable landing platform in Fredericks v. American Export Lines, 227 F.2d 450, 454 (2 Cir., 1955), cert. denied, 350 U.S. 989, 76 S.Ct. 475, 100 L.Ed. 855 (1956); indeed, in one aspect, that case was a better one for a plaintiff since the platform was defective, whereas here the pier equipment was entirely sound if only the stevedore had used it as it was meant to be used. Cf. Arena v. Luckenbach S.S. Co., Inc., 279 F.2d 186 (1 Cir.), cert. denied, 364 U.S. 895, 81 S.Ct. 222, 5 L.Ed.2d 189 (1960). It may well be that once the conveyor was affixed to the ship, a seaman, or a stevedore engaged in unloading or loading, would have been entitled to recover on the ground of unseaworthiness if injured as a result of the conveyor's not being reasonably fit for its intended use, cf. Di Salvo v. Cunard S.S. Corp., 171 F.Supp. 813, 817, 824 (S.D. N.Y.1959); but in such a case the conveyor would have become "appurtenant" to the ship in the significant sense that it would have been within the shipowner's power of inspection whereas here it had not yet reached that status. If this should be deemed a rather fine distinction, the one which plaintiff asks us to make of Fredericks, supra, and also of Carabellese v. Naviera Aznar, S.A., 285 F.2d 355, 90 A.L.R.2d 701 (2 Cir., 1960), cert. denied, 365 U.S. 872, 81 S.Ct. 907, 5 L.Ed.2d 862 (1961) [fall of top-heavy packing case in course of being stowed] would be even finer and, what is still more important, less intelligible. The competing principles, that the shipowner is not liable to a longshoreman for negli-

---

1. None of the cases, dicta from which were cited for the historical premise of Sierac-

ki, 328 U.S. at 96, 66 S.Ct. at 878, 90 L. Ed. 1099, related to such a case.

gence of the stevedores but is for a defect in the ship or her gear even though created by them, inevitably require some rather fine lines to be drawn, as Judge L. Hand pointed out in Grillea v. United States, 232 F.2d 919, 922–923 (2 Cir., 1956). The distinction we draw here is no closer or less well founded than that between Morales v. City of Galveston, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962), and Gutierrez v. Waterman S.S. Corp., supra, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297, between Carabellese v. Naviera Aznar, S.A., supra, on the one hand, and Reddick v. McAllister Lighterage Line, Inc., 258 F.2d 297 (2 Cir.), cert. denied, 358 U.S. 908, 79 S.Ct. 235, 3 L.Ed.2d 229 (1958), and Rich v. Ellerman & Bucknall S.S. Co., 278 F.2d 704 (2 Cir., 1960), on the other; or between Puddu v. Royal Netherlands S.S. Co., 303 F.2d 752 (2 Cir.), cert. denied, 371 U.S. 840, 83 S.Ct. 67, 9 L.Ed.2d 75 (1962), and Grillea v. United States, supra.

Affirmed.

J. JOSEPH SMITH, Circuit Judge (dissenting).

I dissent.

Although I agree that the negligence of the stevedore in using a rope sling passed under the sharp-edged metal underpinning of the baggage conveyor is not a fault of the shipowner, the use of the rope sling with the lift to position the conveyor in the side port of the vessel made the apparatus obviously unfit as a place for the longshoreman to work and the vessel unseaworthy. Attaching the conveyor to the pad-eye on the ship I would hold "seaman's work," under Seas Shipping v. Sieracki, 328 U.S. 85, 66 S. Ct. 872, 90 L.Ed. 1099 (1946), and the injury suffered from the use of the faulty equipment a proper charge against the ship, a part of the cost of carriage, through the unseaworthiness doctrine of liability without fault of the ship, even though, as in Petterson, the defective equipment to be used in discharging the cargo was furnished by the stevedore (Alaska S.S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954),

affirming 205 F.2d 478 (9 Cir., 1953)). While the longshoreman was not in the usual sense on the vessel when injured, he was in contact with the ship between the wharf and the ship, and in making the gangway the connection between the ship and the wharf he was doing work which historically was part of a seaman's work. See The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903), where a seaman was injured on board a vessel at sea while preparing a cargo gangway for use when the ship should tie up at the pier.