**EOI ELECTRONICS, INC., SAI Semispecialists of America, Inc., Plaintiffs-Appellees,**

v.

**XEBEC, a corporation, Defendant-Appellant.**

**Nos. 450, 544, Dockets 85–7672, 85–7674.**

United States Court of Appeals, Second Circuit.

Argued Nov. 19, 1985.

Decided March 6, 1986.

Michael L. Paikin, New York City (Michael L. Paikin, P.C., Nixon, Hargrave, Devans & Doyle, Abigail T. Reardon, New York City, Baker & McKenzie, Howard F. Fine, San Francisco, Cal., of counsel), for plaintiffs-appellees.

Andrew J. Wistrich, Palo Alto, Cal. (Brown & Bain, Palo Alto, Cal., Brown & Bain, P.A., Jack E. Brown, John A. Buttrick, Richard Lustiger, Phoenix, Ariz., Hertzog, Calamari & Gleason, Peter E. Calamari, New York City, of counsel), for defendant-appellant.

Before FEINBERG, Chief Judge, and LUMBARD and OAKES, Circuit Judges.

LUMBARD, Circuit Judge:

Defendant Xebec, a California high-tech corporation, appeals various rulings made by Judge Leonard D. Wexler during and after a six day jury trial in the Eastern District. Plaintiffs EOI Electronics, Inc. ("EOI") and SAI Semispecialists of America ("SAI"), two New York corporations, brought this diversity action for breach of contract to recover payment for shipments of electronics parts that Xebec allegedly accepted. The jury awarded $950,228.63 in damages to EOI, including $219,283.53 of "collection expenses", and $30,810 to SAI, including $7,110 of "collection expenses."

On appeal, Xebec requests a new trial on EOI's claim limited to the issue of Xebec's alleged "remedies" with regard to the parts that the jury found Xebec had accepted. These include the contract remedies of revocation of acceptance and acceptance damages, tort remedies based on Xebec's misrepresentation defense, and Xebec's counterclaims. Xebec also requests that the amended judgments in favor of EOI be vacated or modified in three respects. First, Xebec appeals the denial of its motion for judgment notwithstanding the verdict ("j.n.o.v.") as to $219,283.53 in "collection expenses" awarded to EOI. Second, Xebec requests that certain allegedly prejudicial language contained in the amended judgments for EOI and SAI be stricken. Finally, Xebec requests us to vacate the awards of pre-judgment interest in favor of EOI and SAI. We affirm the judgment of the district court, except that we vacate that part of the judgment which awarded $219,283.53 to EOI for "collection expenses", and we remand to the district court (1) for a new jury trial limited to the issue of the collection expenses, and (2) for amendment of the judgment in accordance with this opinion.

In the summer of 1983, there was an industry-wide shortage of electronic components. Xebec, which manufactures disk drive controller boards for companies such as IBM, needed hundreds of integrated circuits, or "chips," on a weekly basis during that period. When Xebec could not obtain all the components it required from its usual supplier, it contacted EOI and SAI, who are affiliated distributors of electronic components, for an emergency shipment.

The parties reached an oral agreement, and accordingly, between July 14 and September 7, 1983, EOI and SAI delivered over $7 million worth of components to Xebec. Xebec paid for 81.6% of these goods, but refused to pay for the rest.

Xebec claimed that the oral agreement between the parties provided that all goods ordered from EOI were to be delivered no later than two or three days after the orders were placed; it is undisputed that deliveries did not arrive on that schedule. Xebec's preprinted order forms in fact stated that shipments were to be made as soon as possible, but did not specify any definite time for delivery. Xebec asserted that it had paid a premium to have the deliveries expedited, and that the great bulk were nonetheless delivered late and "out of mix" (that is, out of sequence).

Despite Xebec's alleged dissatisfaction with EOI's performance, it promptly paid for the parts delivered beginning on July 14. EOI released parts to Xebec, based on the amount of credit that Xebec had left with EOI at any given time. In late July, Xebec found it could obtain similar goods from other suppliers. On August 5, 1983, Xebec's buyer was instructed by her superiors to place the orders with EOI and SAI "on hold." She did so by telegram, and consequently EOI and SAI temporarily withheld shipments to Xebec. In the second week of August, EOI and SAI pressed to resume deliveries, and became concerned about their inability to contact anyone at Xebec regarding future payments on the contract. EOI and Xebec communicated over the phone, by letter, and in meetings, following which EOI resumed shipments of components to Xebec until the first week of September.

In the last week of August, 1983, Xebec began sending EOI letters, telexes, and checks with legends purporting to reserve "rights and remedies". At that time, EOI demanded payment of invoices approaching a thirty day due date as a condition of discussing future business, and accordingly Xebec paid EOI over $1.3 million in full payment of those invoices. On September 7, 1983, Xebec paid additional EOI invoices in full, totalling over $752,000. Xebec, however, did not pay invoices from EOI totalling $937,902.90, and invoices from SAI totalling $401,392.87.

On September 12, 1983, with knowledge that SAI and EOI were about to sue Xebec in the Eastern District of New York, Xebec filed a complaint against EOI, seeking rescission, in the California Superior Court. On September 13, EOI and SAI began their lawsuits in the Eastern District, and on September 16, Xebec countered with a suit against SAI in the California Superior Court. The California actions were removed to the District Court for the Northern District of California and consolidated; although discovery has taken place, issue has not yet been joined. The California Court has, however, dismissed Xebec's claims for fraud and antitrust (the former with leave to replead), and the defendants' motion for summary judgment remains sub judice. Xebec twice moved unsuccessfully in California to enjoin the New York trials. After Judge Wexler, on February 8, 1985, denied Xebec's motion to amend or consolidate, or stay, dismiss, or transfer, the New York cases, he ordered that the EOI and SAI cases against Xebec be consolidated for trial.

In the New York action, EOI sought damages against Xebec for the balance due on the goods delivered and accepted, in the amount of $1,161,488.76, and for breach of contract in the amount of $3,131,156.41, the agreed value of goods not shipped because Xebec refused to accept them, plus "incidental damages." SAI sought damages against Xebec for the balance due, in the amount of $401,392.87, and for breach of contract in the amount of $1,863,625.65, the agreed value of goods not shipped, plus "incidental damages." By the time of trial, EOI and SAI had mitigated their damages for breach of contract, so that this claim for incidental damages totalled only $375,490.97.

Xebec's answer to the EOI complaint pleaded no counterclaims; this was evidently a tactical decision, because the claims

were the subject of the pending lawsuit in California. As an affirmative defense against EOI, however, Xebec claimed that its performance was "excused" because of EOI's alleged breaches of contract and/or misrepresentations. Xebec's answer to the SAI claim asserted the same affirmative defenses, and attached as counterclaims its California complaint against SAI, which included claims for breach of contract, misrepresentation, and an equitable claim for rescission.

Xebec's theory at trial was that its buyer, Lori Turnovsky, had begun complaining to EOI about the lateness and "out of mix" condition of the shipments almost immediately after they started to arrive. Xebec asserted that Turnovsky had made clear to EOI's employees that the problems with the deliveries were causing line shut-downs and making the parts valueless; Xebec claimed that its complaints gave EOI adequate notice that they were in breach. Xebec asserted that it continued to use many of the parts EOI sent solely as a means of mitigating damages. EOI's trial theory was that Xebec had never had any serious problems with the lateness of the shipments or the sequence in which they arrived, and that this was demonstrated by Xebec's continuous acceptance of and payment for the parts. EOI argued that Xebec created the "breach of contract" theory because, midway through the deliveries, Xebec found that it could obtain the same goods from another distributor at lower prices.

On July 22, 1985, Judge Wexler submitted to the jury all of EOI's and SAI's claims against Xebec. He also submitted to the jury Xebec's affirmative defense concerning EOI's alleged breach of contract, instructing the jury that they could award Xebec damages if they found that EOI was in breach and Xebec either "rejected" the deliveries or "accepted" them, but told EOI of the breach within a reasonable time.[1] Finally, Judge Wexler submitted to the jury Xebec's affirmative defense that its actions constituted a "revocation of acceptance" under Article 2 of the U.C.C.

Judge Wexler declined to charge the jury, however, on all but a small aspect of Xebec's misrepresentation counterclaim against SAI, effectively directing a verdict against Xebec with respect to the bulk of the claim. He also declined to charge the jury on Xebec's affirmative defense of misrepresentation against EOI and SAI, concluding that Xebec's claims were essentially contractual.

On the third day of deliberations, the jury asked the court whether, if a buyer accepts goods with full knowledge of nonconformity and with the understanding that the nonconformity could not be cured (as Xebec arguably did), he can subsequently revoke his acceptance of these goods when later deliveries contain the same nonconformities. At this point, Judge Wexler informed the jury that, as a matter of law, the provisions of the U.C.C. regarding revocation of acceptance were not applicable to the facts of this case. Thus, he effectively directed a verdict on this issue, as well.

That same day, the jury delivered its verdict awarding EOI and SAI the total contract price for goods shipped through August 5, 1983, together with "expenses of collection." The jury did not charge Xebec the $375,490.97 the plaintiffs had requested for goods not delivered. The verdicts amounted to $730,945.10 in favor of EOI, plus $219,283.53 for collection expenses; and $23,700 in favor of SAI, plus $7,110 for collection expenses. The jury denied Xebec's fraud counterclaim against SAI.

Judge Wexler then granted EOI and SAI's motions for pre-judgment interest,

---

1. Thus, in effect Judge Wexler allowed an amendment to the pleadings, over EOI's objection, for Xebec to send a breach of contract counterclaim to the jury. Xebec asserts that the jury did not specifically decide the breach of contract counterclaim because Judge Wexler did not give the jury a specific dollar amount requested by Xebec. Judge Wexler did inform them that they could award what was "fair"; their award of nothing suggests they had indeed decided the counterclaim against Xebec.

and also granted their motions to dismiss the equitable rescission claim. The court granted leave for the plaintiffs to submit an amended judgment incorporating these rulings. On July 26, 1985, Xebec moved 1) to alter the judgment or, in the alternative, for j.n.o.v. to deduct the $219,283.53 of the verdict for EOI's "collection expenses"; and 2) for a new trial limited to the issue of Xebec's contract and tort remedies with regard to the goods that the jury found Xebec had accepted. Judge Wexler denied Xebec's motion on August 9, 1985. Xebec now appeals this denial; Xebec also appeals Judge Wexler's denial of its objection to the amended judgments entered on July 31, 1985, upon submission to the clerk by EOI and SAI, without Judge Wexler's specific approval. These amended judgments charge Xebec with pre- and post-judgment interest in an amount that Xebec disputes, and they contain allegedly superfluous and erroneous language that Xebec fears could prejudice it in the pending California actions.

■ *Revocation of Acceptance* —Xebec argues that Judge Wexler erred in taking away from the jury, during the third day of deliberations, the issue of whether Xebec had revoked its acceptance of goods received from EOI. Although the jury found that Xebec had "accepted" the components delivered up to August 5, and awarded damages on that score, Xebec argues that the jury should have been allowed to pass on the alternative question of whether Xebec had revoked this acceptance, under U.C.C. §§ 2–607(3)(a) and 2–608.

Xebec's alleged revocation of its acceptance of the goods would have been valid if 1) EOI breached its contract by delivering parts late; 2) Xebec gave EOI timely notice of this breach; 3) EOI's late deliveries substantially impaired the value of EOI's performance to Xebec; 4) Xebec reasonably expected EOI's nonconforming tender to be cured through an accommodation; and 5) Xebec gave EOI timely notice of its revocation of acceptance. *See* U.C.C. §§ 2–607(3)(a); 2–608. After receiving the jury's question on the revocation issue, Judge

Wexler decided as a "matter of law" that there had been no revocation of acceptance by Xebec, and essentially directed a verdict in favor of EOI on the issue.

Although Judge Wexler stated no reasons for this ruling, we believe that the record supports it. For Xebec to revoke acceptance there must have been a breach of contract by EOI. Judge Wexler charged the jury that they could award damages to Xebec if they found that such a breach had occurred and that Xebec either had rejected the shipments or had "accepted" them but nevertheless gave timely notice of the breach. The jury, however, did not award Xebec damages. This verdict establishes either that EOI had not breached or, alternatively, that Xebec forfeited its right to damages by failing to notify EOI of a breach within a reasonable time after Xebec discovered—or should have discovered —it. Under either reading, the verdict thus precludes any claim that Xebec effectively revoked acceptance.

■ Nor was there any evidence of "substantial impairment" of the value of the goods EOI shipped to Xebec. Although Xebec asserted that the lateness and "out of mix" condition of the parts rendered them valueless, it had suffered only one line shut-down, and the testimony as to the cause of the shut-down was evasive and indefinite. Further, Xebec continued to use a large portion of the parts it received from EOI, and as to the remainder it simply began ordering similar parts from other —cheaper—distributors.

■ Xebec argues that the court's withdrawal of the issue of revocation toward the end of the jury deliberations unfairly prejudiced Xebec in the jury's eyes. We disagree. The jury had asked Judge Wexler a question and he had a duty to respond to it. *See Fredericks v. American Export Lines,* 227 F.2d 450, 453 (2d Cir.1955). As we have shown, his response was fully supported by the record; the timing of it, in response to the necessities of the deliberations, does not make it erroneous.

■ *Jury Instructions* —Xebec appeals Judge Wexler's decision not to charge the jury with respect to Xebec's alleged fraud defense to the contract. Xebec had tried to show that EOI's salesperson, Donna Dumaresq, knowingly and falsely represented to Xebec's buyer that all the goods for which orders were to be placed were in stock at EOI, and that Xebec's buyer relied on those representations.

EOI points out, however, that the entire fraud issue rested on the testimony of Dumaresq herself, who was Xebec's witness and who was hostile toward her former employer. On cross-examination, she admitted that she had thought of EOI and SAI as a single operating unit, and therefore her statement that EOI had goods "in stock" was not meant as a misrepresentation. When Dumaresq told Xebec that she "had access to a large inventory," it was substantially true, because she did have access to SAI's inventory. As to Xebec's "reliance" on this ostensible misrepresentation, Xebec's buyer testified that this supposed "access to inventory" made her more confident that EOI could meet the "three-day deadline" that Xebec alleges was a part of the oral contract. EOI notes correctly, however, that Xebec is really complaining about EOI's failure to live up to these alleged terms, and thus that this issue is more an essential element of EOI's alleged "breach of contract"—on which the jury was charged—than any evidence of fraudulent inducement. Finally, Xebec failed to show how the alleged fraud caused any damages, other than its general claim that the lateness impaired the value of the goods. As we have shown, the jury decided that issue against Xebec.

Xebec also appeals Judge Wexler's failure to instruct the jury fully on the law of installment sales, U.C.C. § 2–612. Judge Wexler charged the jury that, pursuant to § 2–612(2), Xebec could rightfully reject goods in a particular installment if the installment failed to conform to the terms of the contract, and the lack of conformity substantially impaired the value of the installment. Xebec argues that the instructions were incomplete because they failed to note that, under § 2–612(3), Xebec could have cancelled the entire contract because of the cumulative effect of a series of nonconforming installments.

■ Assuming arguendo that the law of installment sales applies to the evidence in this case, we find that any error in the jury instructions was harmless. U.C.C. § 2–612(3) only concerns cancellation of a contract where the seller's continuously nonconforming performance places him in breach by impairing the value of the whole. Because the jury implicitly found either that EOI did not breach its contract or that Xebec did not give timely notice of the breach, however, an instruction on § 2–612(3) would have made no difference. In light of its verdict, the jury could not have found for Xebec on essential elements of an installment sales theory—that nonconforming installments, if any, cumulatively impaired the value of the whole *and* that Xebec notified EOI of the impairment within a reasonable time.

*Collection Expenses Awarded to SAI* —Evidence showed that the backs of SAI's invoices contained a provision granting to SAI "expenses of collection," consisting of "reasonable attorneys' fees" not to exceed 30% of the damages verdict in favor of SAI. Xebec accordingly does not appeal the jury's award of $7,110 in collection expenses to SAI, for which there was adequate support in the record.

*Collection Expenses Awarded to EOI* —Xebec appeals Judge Wexler's denial of its motion to set aside the judgment with regard to the $219,283.53 of "expenses of collection" the jury awarded to EOI. We believe that it was error for the judge to fail to charge the jury with respect to the expense provisions, and we therefore vacate the award and remand for a new jury trial limited to the issue of such expenses.

■ In awarding attorneys' fees amounting to exactly 30% of the verdict for EOI, the jury had heard only the testimony of SAI's customer service manager, La Rosa, who stated that EOI and SAI used the

same billing and invoice procedures.[2] The jury apparently believed—encouraged by EOI's counsel in summation—that EOI's invoices had been shown to contain a 30% provision identical to that contained on the backs of the SAI invoices, and that the collection expenses for the two plaintiffs must "stand or fall" together. Xebec attempted to request, at the charging conference, that the judge clarify for the jury the findings upon which an expenses award would have to be predicated, but the judge refused to entertain such a request. Because the issue of Xebec's liability to EOI for collection expenses was not considered by the court, and the jury was not instructed about the issue, the award of such expenses must be vacated. Indeed, there is considerable doubt whether there was any evidence to support this award.

 *Amended Judgments* —Xebec appeals the amended judgments on the ground that the plaintiffs added awards for pre- and post-judgment °interest, in an amount Xebec disputes, in an ex parte and procedurally improper manner. Unfortunately, the district judge did not sign the amended form of judgment to manifest his approval. *See* Fed.R.Civ.P. 58. First, EOI and SAI computed the pre-judgment interest from the date of August 5, 1983. Xebec points out, however, that the first payment for the goods shipped was not due until August 14, 30 days after the first delivery was made. Thus, on any interpretation of the facts, the plaintiffs' cause of action could not have accured until August 14 at the earliest. *See Collier v. Granger,*

258 F.Supp. 717, 719 (S.D.N.Y.1966) (prejudgment interest is "computed from the earliest ascertainable date the cause of action existed"). Consequently, the amended judgments must be modified to recompute the interest from August 14, 1983. In addition, the interest on the judgment for EOI should be computed on the proper sum of $730,945.10.

 We also agree with Xebec that the recitals of the verdicts should be reexamined. When the plaintiffs had the judgments amended to add the interest due them, they also added language stating that "defendant's breach of contract claim and misrepresentation claim have been denied." This was done on an ex parte basis without approval of the district judge before entry. *Compare* Rules 8 and 9 of Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Civil Rules") (requiring (1) notice to adverse party before entry of judgment and (2) district judge's manifested approval). ° The amended judgments not only were entered in a procedurally irregular manner, but they may also be misleading. Both judgments state that Xebec's breach of contract claims had been "denied," when in fact the jury did not *expressly* render a verdict on this issue. Although we have concluded herein that such a view was implicit in the jury's award of full damages to the plaintiffs, we nevertheless believe that the district court should review any recitals to ensure their accuracy.[3]

---

2. LaRosa testified as to "industry practice" favoring awards of collection expenses. This is misleading, however, because the "industry practice" about which LaRosa testified was in fact a 25% "restocking charge," not any sort of collection expense charge. As Xebec points out, the restocking charge does not even apply here because the charge involved only parts returned by Xebec, which the jury found Xebec rightfully rejected.

3. Xebec also argues that Judge Wexler erred in denying Xebec's motion under Fed.R.Civ.P. 15(b) at the end of the evidence to amend the pleadings to conform to the evidence presented at trial. Xebec asserts that the parties litigated Xebec's unpleaded fraud and breach of contract

counterclaims against EOI by implied consent of the parties, and that the court improperly prevented Xebec from asking the jury for damages based on these claims.

Judge Wexler did in fact charge the jury that they could award "fair" damages to Xebec if EOI was in breach of contract and Xebec made a timely objection after accepting them. Xebec did not object to this charge, nor does it appeal the charge now. Although this ruling did not technically constitute a Rule 15(b) amendment, it was a de facto amendment to the pleadings and the jury decided to award no damages to Xebec. As to the fraud counterclaims, we agree with the plaintiffs that the issue was not tried with their consent, as they frequently objected

The judgment of the district court is affirmed except for the following modifications: (1) to compute pre-judgment interest from the date of August 14, 1983; (2) for the court to review the accuracy of language alluding to the judge and jury's disposition of Xebec's fraud and breach of contract claims against the plaintiffs; (3) to vacate the award of $219,283.53 for "collection expenses," thereby reducing the judgment for EOI to $730,945.10; and (4) to recompute interest on the judgment, as modified. We also remand to the district court for a new jury trial limited to the issue of whether EOI is entitled to the collection expenses it claims.

Remanded for further proceedings and the entry of a judgment in accordance with this opinion.

to evidence based on the scope of the pleadings. Further, EOI put in no case designed to defeat either of these putative counterclaims, other than cross-examining Xebec's witnesses. Therefore, Judge Wexler acted within his discretion in denying the amendment to the pleadings under Rule 15(b).