TRINIDAD CORPORATION, as owner of the S. S. LYONS CREEK, Libellant,

v.

S. S. SISTER KATINGO and Nautilus Petroleum Carriers Corporation, Claimant-Petitioner,

v.

MORAN TOWING & TRANSPORTATION COMPANY, Inc., Respondent-Impleaded,
TUG HELEN B. MORAN, TUG DIANA MORAN CORPORATION, Claimant-Impleaded,
and
TUG BARBARA MORAN, TUG HARRIET MORAN, INC., Claimant-Impleaded.

No. 62 Ad. 1016.

United States District Court
S. D. New York.

June 27, 1967.

———◇———

Bigham, Englar, Jones & Houston, New York City, for libelant; Charles Van Hagen, New York City, of counsel.

Zock, Petrie, Shemenan & Reid, New York City, for claimant-petitioner; John Shemenan, New York City, of counsel.

Burlingham, Underwood, Barron, Wright & White, New York City, for claimant-impleaded; Eugene Underwood, New York City, of counsel.

MEMORANDUM

COOPER, District Judge.

On May 22, 1960, libellant's vessel, the S.S. Lyons Creek, was struck by the S.S. Sister Katingo during the course of the latter's undocking operation. Trinidad Corporation, owner of the Lyons Creek, sued Nautilus Petroleum Carriers Corporation, the owner of the Sister Katingo, the claim ultimately being settled and the libel dismissed on consent. Nautilus here prosecutes its indemnity claim against Moran Towing & Transportation Company, Inc., the owner of the two tugs assisting the Sister Katingo and the employer of Edward Ericksen, a Moran

tugboat captain who acted as undocking pilot.

Nautilus' claim against Moran is based upon its contention that the accident was caused by the negligence of Ericksen and that Moran, as the employer of the pilot, is responsible for his negligence under the doctrine of *respondeat superior*. Moran responds that Ericksen was not negligent and that, in any event, Moran is not liable for his conduct as pilot.

■ We find upon all the credible evidence adduced that Ericksen was not negligent in his actions as pilot. From the evidence we are satisfied that Ericksen planned the undocking maneuver with care, relying, as he had a right to do, upon a navigational buoy maintained by the Coast Guard and the principal navigational aid indicated by the charts. The evidence clearly established that this buoy was substantially off its charted position. We find that the shifting of the buoy was the exclusive cause of the accident.

We reject Nautilus' contention that Ericksen had either prior notice that the buoy had shifted or opportunity to ascertain, by reason of other navigational aids and landmarks, that the buoy was not in its proper place. Under all the circumstances, Ericksen was entitled to rely on the buoy's charted position, and he accordingly exercised due care in undocking the Sister Katingo. See Russell, Poling & Co. v. United States, 151 F.Supp. 11, 16 (S.D.N.Y.1957), aff'd 252 F.2d 167 (2d Cir. 1958).

■ We further find that even if Ericksen's conduct was culpable, Moran would not be responsible for his negligence. A "Pilotage Clause" contained in Moran's Rate Schedule, and long followed by it in all of its operations, specifically disclaims Moran's liability for the acts of a Moran employee acting as a pilot. The Clause clearly makes such a pilot the servant of the vessel.

The contract for tugboat assistance in the instant case was oral, consisting of a telephone order by Fertig, the Master of the Sister Katingo, and acceptance by Moran's dispatcher. Terms and conditions not being discussed, the prior dealings of the parties must be examined.

The evidence here adduced convincingly demonstrates that Nautilus had full awareness and notice of the Pilotage Clause. Nautilus executives and Captain Fertig were not newcomers to this port. Over a considerable period of time they had been given copies of the Moran Rate Schedule wherein the aforesaid Clause was set out; had prior dealings with Moran and were fully aware of what the Clause embraced; knew the custom of the tug industry.

From the entire trial record we are fully convinced, and accordingly we find, that the Pilotage Clause was incorporated into the oral contract involved here. See Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311 (1932); Tankers & Tramps Corp. v. Tug Jane McAllister, 358 F.2d 896 (2d Cir. 1966).

■ We reject completely Nautilus' contention that this Pilotage Clause is invalid. The clause has been uniformly upheld against attack. See Sun Oil Co. v. Dalzell Towing Co., supra; Transpacific Carriers Corp. v. Tug Ellen F. McAllister, 336 F.2d 371 (2d Cir. 1964). Nautilus has adduced no evidence that the Clause is the result of a monopolistic bargaining position. To the contrary, Moran has demonstrated the reasonableness of shifting liability to the vessel.

■ We further find that the tugs Helen Moran and Barbara Moran were not at fault. Nautilus' only assertion of liability against the assisting tugs rests on its claim that the tugs failed to warn Ericksen of the imminence of collision. We find that the tugs functioned normally, carried out all orders given, and were not in a position to see what led up to collision. With respect to this aspect of the case, the total trial record establishes that the tugs were in no wise at fault.

Nautilus' claim for indemnity against Moran and its tugs is dismissed.

978

Impleaded respondent shall submit findings of fact and conclusions of law in accordance with this memorandum within two weeks.

So ordered.