**Hempsal SYDNOR, Jr.**

v.

**VILLAIN & FASSIO e COMPANIA IN-TERNAZIONALE di Genova Societa RIUNITE di NAVIGAZIONE, S. p. A.**

**Civ. A. No. 21021–N.**

United States District Court,
D. Maryland.

Feb. 23, 1971.

Joseph F. Lentz, Jr. and Monfred, Lentz & Hooper, Baltimore, Md., for plaintiff.

A. Owen Hennegan, Towson, Md., for defendant.

NORTHROP, Chief Judge.

This case concerns the liability of a vessel, under maritime law, for a dockside injury to a longshoreman caused by pier-based equipment transferring cargo on the pier preparatory to loading. No ship's gear or personnel were being used, nor was any crane, conveyor, or other land-based loading equipment directly involved.

The operative facts are as follows: while Hempsal Sydnor, Jr., a longshoreman, was in the process of bending down to procure some straps, he was struck in the back by a bale of rags. These rags were pushed over by a tractor as it was transferring the bales on the pier in preparation for their loading on the defendant vessel. No use was being made of any ship's gear or personnel. Sydnor, however, claims the vessel to be unseaworthy and negligent contending that the preparatory loading of a vessel in navigable waters is work in the ship's service. In support of this position, plaintiff relies upon the expansive holdings in a number of cases extending a shipowner's liability for personal injuries incurred either upon the vessel or pier while the ship is moored at a dock. E.g., Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S. Ct. 926, 4 L.Ed.2d 941 (1960); Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954); and Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Plaintiff also relies on a number of lower court decisions dealing with this extension of admiralty and maritime jurisdiction. E.g., Byrd v. American Export Isbrandtsen Lines, Inc., 300 F.Supp. 1207 (E.D.Pa.1969); Litwinowicz v. Weyerhaeuser S.S. Co., 179 F.Supp. 812 (E.D.Pa.1959).

The closest of the so-called controlling cases to the situation we find here are the *Gutierrez* and *Byrd* decisions. In the *Gutierrez* case, a longshoreman slipped on some loose beans spilled on the dock and suffered personal injuries. These beans were being unloaded from a vessel and due to a hole in a bag, some of the beans fell upon the pier. The court found controlling the fact that the beans were packed in broken and defective bags, some of which were being repaired by coopers aboard the ship during unloading. The court found that the bean bags were unfit and thus unseaworthy; that there was a duty to provide a seaworthy ship and gear, including cargo containers, and this duty extended to longshoremen unloading the ship, regardless of whether they were standing on board or on the pier.

In the *Byrd* decision, the facts are even closer to the ones presented before this court. In that case, two longshore-

men were engaged in an attempt to move from the back to the front of the pier a forklift truck which was intended to be loaded aboard defendant's vessel as cargo. The attempt was undertaken by backing up another forklift truck so that the latter could tow the former forward. As the plaintiff in that case bent down to attach a tow rope, the forklift backed up catching plaintiff between the two vehicles. No ship's gear was attached to either forklift truck and the moving vehicle was owned by the stevedore company. The court held that the longshoreman was engaged in the service of the ship, a loading operation, and was using equipment necessary for that purpose. This equipment was, therefore, at least temporarily, adopted by the ship making the vessel liable. *But see* Lundy v. Isthmian Lines, Inc., 423 F.2d 913 (4th Cir. 1970) in which a ship was not held to be unseaworthy merely because a tow motor driven by one longshoreman rode over the foot of another longshoreman on board the vessel during the discharge of the ship's cargo. The court said "our decisions do not require a finding of unseaworthiness as a matter of law from every negligent act or omission of a longshoreman that injures a fellow worker." *Id.* at 915. This appears to be the settled law in this circuit. *See* Benton v. United States Lines, Inc., 297 F.Supp. 87 (D.Md.1968), aff'd, 408 F.2d 378 (4th Cir. 1969). The fifth and ninth circuits likewise have rejected the theory that the singular negligent act of a longshoreman can render a vessel unseaworthy. Luckenbach Overseas Corp. v. Usner, 413 F.2d 984 (5th Cir. 1969), cert. granted, 397 U.S. 933, 90 S.Ct. 940, 25 L.Ed.2d 114 (1970); and Tim v. American President Lines, Ltd., 409 F.2d 385 (9th Cir. 1969).

■ Other cases cited by Sydnor in support of his position involve equipment either shore-based or ship-based, such as conveyors, cranes, etc., in use in the actual process of loading or unloading a vessel. *See* Huff v. Matson Nav. Co., 338 F.2d 205 (9th Cir. 1964), cert. denied, 380 U.S. 943, 85 S.Ct. 1026, 13 L.Ed.2d 963 (1965) (longshoreman in hold injured because of defect in conveyor stationed ashore); Spann v. Lauritzen, 344 F.2d 204 (3rd Cir.) cert. denied, 382 U.S. 938, 86 S.Ct. 386, 15 L.Ed.2d 348 (1965) (defective shore-based hopper being used in unloading vessel caused injury to longshoreman on shore). These cases are based upon the theory that there can be no "modern divisions" of labor, and a shipowner's liability for an unseaworthy vessel extends beyond the members of the crew and include a longshoreman like the plaintiff. A shipowner may be liable even though the unseaworthiness be transitory and the injuries incurred were suffered elsewhere than aboard the vessel.

There is, however, a line of decisions attempting to limit this liability to some direct connection with the vessel itself. *See* Forkin v. Furness Withy & Co., 323 F.2d 638 (2d Cir. 1963); Fredericks v. American Export Lines, Inc., 227 F.2d 450 (2d Cir. 1955); Metzger v. Steamship Kirsten Torm, 245 F.Supp. 227, 1965 A.M.C. 2272.

It is the plaintiff's thesis that no matter what is the causation of an injury on the dock, whether ship's gear or personnel are involved, if a ship is being loaded or discharged, a longshoreman is permitted to challenge the seaworthiness of the vessel. If this theory were adopted, liability of the ship could extend without limit to accidents far removed from the vessel on the pier or on the land. It is even conceivable that a claim for injuries could be made involving pier-based cargo not destined to be loaded but which must be moved in order to bring up cargo for loading upon the vessel. A logical corollary, one might readily contend, is that if it were necessary for the stevedore to help load cargo for a vessel from a land-based warehouse, and an injury occurred in the warehouse, he could also claim unseaworthiness. Recent decisions of the Supreme Court, however, would appear to be directed toward a limitation rather than an expansion of the unseaworthiness doctrine. This court feels that to hold liable a ship for

the injuries suffered by a stevedore, incurred upon the dock in preparation for the loading of the vessel, where no ship's personnel, gear or appurtenances were involved, is an unwarranted extension of the maritime doctrine of unseaworthiness.

In Nacirema Operating Co., Inc. v. Johnson, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969), the Supreme Court limited the extension lower courts had given to the Longshoremen's and Harbor Workers' Compensation Act and its application to injuries incurred by longshoremen upon the pier. The Supreme Court, speaking through Justice White, pointed out that there had always been a clear understanding in the law that piers and wharves permanently affixed to land were extensions of the land and that injuries occurring on the pier or wharf were not "upon the navigable waters" but on land. The Court stated specifically that the Longshoremen's Act applies strictly to injuries occurring "upon the navigable waters." Justice White further stated, at page 354: "There is much to be said for uniform treatment of longshoremen injured while loading or unloading a ship. But even construing the Extension Act to amend the Longshoremen's Act would not effect this result, since longshoremen injured on a pier by pier-based equipment would still remain outside the Act."

Nacirema has been interpreted by some sources as applying only to cases arising under the Longshoremen's and Harbor Worker's Compensation Act. But the restriction of liability on the part of a vessel for unseaworthiness was recently stated by the Supreme Court in Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971). In Usner, the court drew a distinction between the twin theories of unseaworthiness and negligence. By doing so, the Court placed a definite demarcation on the unrestricted application of the doctrine of unseaworthiness. The Court held that a vessel's condition of unseaworthiness might arise from any number of circumstances but the isolated personal negligent act of a petitioner's fellow longshoreman could not be imputed to the condition of the ship, her appurtenances, cargo or crew. The Court stated that for an "individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence." The Court specifically rejected the theory that an isolated personal negligent act by a stevedore, sometimes referred to as "instantaneous negligence," could be used to hold the vessel liable.

 Based upon the Supreme Court's recent holdings, this court feels that liability of a vessel is being circumscribed; and when, as in this case, a longshoreman is injured on the pier by pier-based equipment, when no ship's equipment or personnel are involved and no pier-based equipment is being used in the actual loading or unloading of the vessel, no recovery should be permitted against the vessel. This court therefore grants defendant's motion for summary judgment.