**ACADEMY TANKERS, INC., and S.S. THOMAS M., Appellants,**

v.

**STEUART TRANSPORTATION COMPANY, and TUG LITTLE CURTIS, Appellees.**

**No. 14920.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1971.

Decided May 3, 1971.

Jervis Spencer Finney, Baltimore, Md. (Ober, Grimes & Shriver, Baltimore, Md., on brief) for appellants.

William B. Ewers, Baltimore, Md., for appellees.

Before HAYNSWORTH, Chief Judge, and BRYAN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

The THOMAS M and her owner, Academy Tankers, Inc., appeal from a judgment of the district court exonerating the tug, LITTLE CURTIS, and her owner, Steuart Transportation Company, from all liability for damages to a pier owned by the Steuart Investment Company when the THOMAS M, an oceangoing tanker, collided with the pier as it attempted to dock with the assistance of the LITTLE CURTIS. During the course of the trial the THOMAS M made an offer of judgment, which the pier owner accepted. On this appeal the THOMAS M does not contest its own fault, but it contends that the LITTLE CURTIS should share responsibility for the collision. We affirm the district court's exoneration of the tug.

On November 3, 1967, the THOMAS M proceeded up the Chesapeake Bay into the Potomac River with a full cargo of oil for discharge at a pier on Piney Point. The Steuart Transportation Company, acting as agent for the THOMAS M's charterers, engaged its own tug, LITTLE CURTIS, to assist the THOMAS M in docking. The tug did not provide a docking master, and the ship and tug were subject to the control of the THOMAS M's master and the Chesapeake Bay pilot, who had boarded the vessel that morning.

Since there was an ebb tide of about one and a half knots, the pilot decided to drop the port bow anchor, stem the tide, and dock the tanker starboard side to the pier. At his direction, the LITTLE CURTIS tied its bow to the tanker's port quarter so it could come head-on at a 90° angle to push the tanker's stern toward the pier when it was ordered to do so. Although it made fast to the tanker, the tug was never able to come into position, the tanker could not be brought parallel to the pier, and the bow of the tanker collided with the pier.

The district judge found that the tanker approached the pier at an unreasonable speed; that it was traveling so fast that the tug could not execute the maneuver it was ordered to make; and that even if the tug could have come head-on, it could not have pushed the tanker's stern parallel to the pier in sufficient time to have avoided the accident. Since these findings are amply supported by the evidence, we are bound to accept them, McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954).

The court also found that the tug was not at fault, and that even if it had been, no act or omission on its part was a proximate cause of the accident. The THOMAS M, however, contends that the tug is liable as a matter of law because it did not warn of the tanker's excessive speed and of its inability to execute the order to come head-on and push the stern.

 Assuming for the purpose of this opinion, that the master of a tug has a duty to give warnings of the dereliction of the ship it is assisting, cf. Chitty v. M. V. Valley Voyager, 408 F.2d 1354 (5th Cir. 1969), and of the tug's inability to execute an order, we nevertheless find no basis for imposing liability on the LITTLE CURTIS. The tug secured its bow to the tanker's port quarter eight minutes before the collision. Neither the pilot nor the master of the THOMAS M told the tug's master their plan for docking the vessel. The tug's crew were not in a position to see the pier, and its master did not know the tanker was on a collision course. The duty of the tug's master to warn of excessive speed arose only when in the exercise of reasonable care, he knew or should have known that the ship would not reduce speed. He was not required to anticipate that the tanker would hold its rudder amidship and fail to put its engines astern until a collision was imminent.

The district judge was justified in drawing the inference that by the time the tug's master learned the ship was moving so fast that he could not come head-on, it was too late to avert the collision. The tardy order to come head-on was given at 1626, only four minutes before the collision. The court found that under the most favorable circumstances it would take the tug at least 30 seconds to execute the order. Both the pilot and the tanker's master saw the tug was not coming into position, but by 1627, the opportunity for alternative action had passed. Thus, even if the tug had been able to give 30 seconds warning of excessive speed and its inability to come head-on, it is doubtful that the accident could have been avoided. The best chance to avert the collision, expert testimony indicated, would have been for the ship to have given a hard left rudder and a surge of forward power before 1627. The tanker never attempted this maneuver. Instead it went half astern at 1627, full astern at 1628, and collided with the pier at 1630.

 Speculation that the accident could have been avoided had the tug's master given warning of the tanker's speed and of his inability to come head-on

furnishes an inappropriate basis for holding the tug liable as a matter of law. This case provides an apt occasion for application of the rule:

"Where fault on the part of one vessel is established by uncontradicted testimony, and such fault is, of itself, sufficient to account for the disaster, it is not enough for such vessel to raise a doubt with regard to the management of the other vessel. There is some presumption at least adverse to its claim, and any reasonable doubt with regard to the propriety of the conduct of such other vessel should be resolved in its favor." The City of New York, 147 U.S. 72, 85, 13 S.Ct. 211, 216, 37 L.Ed. 84 (1893).

The THOMAS M also complains that the damage to the pier was increased because the tug pushed the tanker forward until after the impact. The evidence, however, indicates that because of the relative size of the vessels and the short time the tug was pushing the tanker, the effect of the tug would be "hardly noticeable."

We conclude, therefore, that the district judge correctly held that the tug did not in any way contribute to the accident. The judgment is affirmed.