**Linwood Randolph BARLOW,**
**Plaintiff,**

v.

**UGLAND MANAGEMENT COMPANY**
**and A/Uglands Rederi, Defendants.**

**Civ. No. 71–1381–H.**

United States District Court,
D. Maryland.

Feb. 12, 1973.

Joseph F. Lentz, Jr., Monfred, Lentz & Hooper, and Stanley H. Block, Baltimore, Md., for plaintiff.

Randall C. Coleman, Robert A. Holmes, and Ober, Grimes & Shriver, Baltimore, Md., for defendants.

HARVEY, District Judge:

Linwood Randolph Barlow, a longshoreman, seeks to recover in this action for injuries sustained on September 10, 1971 on board the M/V SENORITA, when it was being loaded in the Port of Baltimore. At the time of his injuries, plaintiff was employed by Chesapeake

Operating Company and was a member of a gang of longshoremen loading steel slabs onto the vessel. He seeks damages from the shipowner on theories of unseaworthiness and negligence.[1]

By agreement of counsel the issue of liability has been tried separately by the Court under Rule 42(b) of the Federal Rules of Civil Procedure, with the issue of damages being reserved for later trial, if necessary. Findings of fact and conclusions of law under Rule 52(a) are contained herein.

No evidence was produced at trial to indicate that the shipowner was in any way negligent. The only issue presented therefore is whether the facts here make out a case of unseaworthiness as that doctrine of liability has been developed and expanded by decisions of the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit. In asserting that the SENORITA was not unseaworthy on the date of the accident, defendants claim that plaintiff's injuries were caused by the act of negligence of a fellow harbor worker and that defendants are therefore not liable under Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S. Ct. 514, 27 L.Ed.2d 562 (1971), and Benton v. United States Lines, Inc., 297 F.Supp. 87 (D.Md.1968), aff'd 408 F.2d 378 (4th Cir. 1969). Alternatively, defendants contend that if this Court finds that the accident was caused by defective equipment, such equipment was not owned by, operated by, controlled by or attached to the vessel and therefore defendants are not liable under Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971) and Sydnor v. Villain and Fassio, etc., 323 F.Supp. 850 (D.Md.1971), aff'd 459 F.2d 365 (4th Cir. 1972).

The evidence in the case indicates that plaintiff was located in the hold of the ship at the time of the injury, working as a member of a gang of longshoremen. Drafts of steel slabs were being lowered by means of a pier-based crane into the hold where plaintiff was working. As one of these loads was being lowered, it struck the coaming of the hatch. A chain securing the load thereupon broke, causing the load and the chain to fall and resulting in injury to the plaintiff. Plaintiff claims that the chain broke because it was defective and that his injuries were therefore caused by the unseaworthy condition of the ship. In particular, he relies on Venable v. A/S Det Forenede Dampskibsselskab, 399 F.2d 347 (4th Cir. 1968) and Sanderlin v. Old Dominion Stevedoring Corp., 385 F.2d 79 (4th Cir. 1967).[2]

The basic facts relating to the loading operation involved in this case are not in dispute. Each steel slab was prepared by longshoremen on the pier for lifting into the hold of the ship. The slabs were approximately 30 feet long, 41 inches wide and 7 inches thick. To prepare a draft for loading, a heavy steel sling chain would be wrapped around each end of a slab, thus choking the draft at both ends. Each load weighed approximately 12 tons.

A mobile crane owned by Hoffman Cranes of Maryland, Inc. was located on the pier next to the ship. When a draft was ready, this crane would be used to pick it up off the pier, raise it to a sufficient height to clear the deck of the ship, move it laterally into position over a hatch and then lower it down through the hatch into the hold of the ship. No equipment of the ship was used in the loading operation, the hook, runners, shackle, adjustable spreader, chains and cable all being owned either by the stevedoring company or the crane

1. Third party claims were initially filed by the shipowner against plaintiff's employer and against the employer of a crane operator involved in the loading. Prior to trial, these third party claims were dismissed at the request of the shipowner.

2. As the accident occurred on board ship, it is conceded by defendants that this Court has jurisdiction under maritime law. See Victory Carriers, Inc. v. Law, *supra* 404 U.S. at 205–207, 92 S.Ct. 418.

company.[3] None of this equipment was attached in any way to the ship, nor were any of the ship's officers or crew involved in the loading operation. To assist the crane operator, a stevedore would stand on the deck of the ship and give signals as a load of steel was positioned over a hatch for lowering.

On the day in question, September 10, 1971, the plaintiff reported for work at around 8:00 A.M. Shortly after 3:00 P. M., longshoreman Roberts, who was acting as deckman and giving signals to the crane operator at the time, saw a load being lowered towards open hatch No. 1 too rapidly. He yelled, "Hold it" and signalled to the crane operator to stop. However, the load, which was not in the proper position and was being lowered too fast, struck the coaming of the hatch. The chain at one end of the draft thereupon broke, causing the slab and chain to fall into the hold. Plaintiff, who was standing below, was struck by the falling chain, sustaining injuries to his neck, back and arm.

Charles Marino, Jr., the crane operator, testified that he saw the deckman's signal and realized that there was not enough room for the load to clear the hatch. He tried to stop the load but the "back-down" slipped, and he could not hold the heavy steel with the brake. To one of the longshoremen in plaintiff's gang, he admitted immediately after the accident that the load "got away". Neither before nor after the accident did Marino experience any difficulty with the operation of the crane or with any of the crane's equipment that was used in the loading process.

█ From the evidence produced, this Court concludes that the sole proximate cause of the accident was the negligence of Marino, the crane operator. Marino misjudged the speed and angle of this particular load and was unable to stop its rapid descent when he realized his error. The chain broke not because it was defective, but because of the force of the twelve tons of steel as it struck the coaming of the hatch. This Court accordingly finds that plaintiff's injuries were not caused by the unseaworthy condition of the vessel, of its cargo or of its equipment or appurtenances.[4]

In the absence of an unseaworthy condition, liability based on the doctrine of unseaworthiness cannot be found. Usner v. Luckenbach Overseas Corp., *supra*, 400 U.S. at 498, 91 S.Ct. 514; Benton v. United States Lines, *supra*, 297 F.Supp. at 89. Indeed, the facts of the present case are quite similar to those in *Usner*. There a fellow longshoreman of the plaintiff was operating a ship's winch in the course of loading cargo from a barge to the ship. The plaintiff and other longshoremen were located on the barge positioned alongside the ship, where plaintiff's job was to "break out" the bundles of cargo by securing them to a sling attached to the fall each time it was lowered from the ship's boom by the winch operator. On one occasion, the winch operator did not lower the fall far enough, and plaintiff motioned to the flagman standing on the deck of the ship to direct the winch operator to lower the fall farther. The winch operator then lowered the fall, but he lowered it too far and too fast. The sling struck the plaintiff, knocking him to the deck of the barge and causing his injuries. Neither before nor after this occurrence was any difficulty experienced with any of the equipment or appurtenances of the ship.

In his opinion in *Usner*, Mr. Justice Stewart reviewed the development of the law of unseaworthiness, concluding (400 U.S. at page 498, 91 S.Ct. at page 517) that "unseaworthiness is a *condition*" (emphasis in original) and that whether such condition came into being by negligence or otherwise "is quite irrelevant to the owner's liability for personal inju-

---

3. The SENORITA was a gearless vessel which usually carried bulk ore, but it was also used to transport steel slabs of the type involved here.

4. Nor is there any indication from the evidence that the accident was caused by the ship's crew.

ries resulting from it." At page 500, 91 S.Ct. at page 518, the Court said:

"What caused the petitioner's injuries in the present case, however, was not the condition of the ship, her appurtenances, her cargo, or her crew, but the isolated, personal negligent act of the petitioner's fellow longshoreman. To hold that this individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence that we have so painstakingly and repeatedly emphasized in our decisions."

In concluding, Mr. Justice Stewart observed that it would be erroneous, where no condition of unseaworthiness existed, to hold the shipowner liable "for a third party's single and wholly unforseeable act of negligence." (At 500, 91 S.Ct. at 518).[5]

Similarly in this case, no condition of unseaworthiness of the SENORITA or of any of its equipment or appurtenances existed. Under *Usner*, the shipowner cannot be held liable for the single and wholly unforseeable act of Marino, the crane operator. The proximate cause of plaintiff's injuries was the isolated, personal negligent act of such fellow harbor worker.

The cases relied upon by the plaintiff are not to the contrary. In the *Venable* case, which was tried before a jury, the plaintiff was engaged in stowing hogsheads when he stepped back into an empty space between the hogsheads and fell, sustaining back injuries. At the trial, he urged that inadequate lighting, faulty stowage of the hogsheads and failure of defendant to supply and employ dunnage created unseaworthy conditions which proximately caused the accident. Judge Sobeloff noted (399 F.2d at 353) that the question for the jury in that case was whether the stowage of cargo on the ship was safe for its intended use as a working surface for the longshoremen engaged in the loading or unloading of heavy hogsheads, and he pointed out that the spaces themselves might present a hazard to the longshoremen and thus constitute an unseaworthy condition.

In the *Sanderlin* case, the District Court had dismissed a suit brought by a longshoreman for lack of maritime jurisdiction. The Fourth Circuit disagreed, finding that admiralty jurisdiction did exist under the facts of that case. That suit involved an action by a cargo checker against a stevedoring company which was not his employer. The liability of the ship because of an unseaworthy condition was not at issue in that case.

Plaintiff relies on footnote 2 found at page 82 of 385 F.2d of the *Sanderlin* opinion, in which the following comment was made:

"2. We assume, without the necessity of deciding the issue, that Sanderlin, an employee of the ship, could have prevailed had he sued the ship for unseaworthiness because of the negligently performed stevedoring. See Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1962). Equipment used in the stevedoring operation, whether aboard ship or on the pier, is an appurtenance of the ship, and the ship has a non-delegable duty to see that the loading and unloading are done properly. See, e. g., Spann v. Lauritzen, 344 F.2d 204 (3rd Cir.), cert. denied, 382 U.S. 938, 86 S.Ct. 386, 15 L.Ed.2d 348 (1965) and Huff v. Matson Navigation Co., 338 F.2d 205 (9th Cir. 1964), cert. denied, 380 U.S. 943, 85 S.Ct. 1026, 13 L.Ed.2d 963 (1965)."

Since the claim in that case was not against the ship and the sole issue was whether maritime jurisdiction existed, this "assumption" can hardly be considered as authority concerning the extent

---

5. To the same effect is this Court's earlier decision in Benton v. United States Lines, Inc., *supra*, which was subsequently affirmed by the Fourth Circuit.

of a shipowner's liability because of the unseaworthiness of his ship. In any event, the Court's "assumption" in *Sanderlin* can have little vitality today in view of the subsequent Supreme Court holding in Usner v. Luckenbach Overseas Corp., *supra*, and the Fourth Circuit's similar holding in Benton v. United States Lines, Inc., *supra*.

In contending that the accident was caused by the unseaworthy condition of defendant's ship, plaintiff also relies on provisions of the Safety and Health Regulations for Longshoring, 29 C.F.R. §§ 1918.1 et seq. In particular, plaintiff cites § 1918.64(b) and (c), which relate to chains and chain slings used in loading operations.[6] Subsection (b) requires that all chains be given a visual inspection before being used on the job, and further requires that a thorough inspection of all chains should be made every three months. Subsection (c) requires that interlink wear of chains shall be noted and a chain removed from service when maximum allowable wear at any point of link has been reached.

In seeking to prove that the chain which broke in this case was defective, plaintiff introduced in evidence a piece of the chain which was found in the hold of the ship after the accident occurred. But plaintiff's proof does not indicate whether this piece is in fact the one that broke when the draft of steel struck the coaming or whether it is another piece which was broken and mashed when the 12 tons of steel fell 28 feet into the hold together with the chain itself. Nor is there any other evidence to indicate that any part of the chain used to choke the load of steel involved in this case was in any way defective. The small piece of chain in evidence was recovered by a longshoreman after the accident. It has quite clearly been subjected to stress and deformation, but plaintiff introduced no evidence to indicate that this piece of chain was in any way worn or defective before being involved in the accident itself.

Even if it were to be assumed that the provisions of Subsection (b) were violated and that such violation rendered the ship unseaworthy, the facts of this case indicate that any such unseaworthiness was not the proximate cause of plaintiff's injury. As stated hereinabove, the sole proximate cause of the injury was the negligence of the crane operator.

For the reasons stated, this Court concludes that the defendants are not liable under the *Usner* decision. It is therefore not necessary to consider the alternative arguments advanced by defendants under Victory Carriers, Inc. v. Law, *supra*, and Sydnor v. Villain and Fassio, *supra*. Judgment is hereby entered in favor of the defendants, with costs.

6. These provisions were formerly codified as 29 C.F.R. § 1504.64(b) and (c).